IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LATASHAR SUSANNE REYNOLDS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL ACTION 09-00599-KD-B |
| | * | |
| MICHAEL J. ASTRUE, | * | |
| Commissioner of | * | |
| Social Security, | * | |
| | * | |
| Defendant. | * | |

**REPORT AND RECOMMENDATION**

Plaintiff Latasha Susanne Reynolds ("Plaintiff"), who is proceeding *pro se*, brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for period of disability and disability income benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., and 1381 et seq. This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record and memoranda of the parties, it is RECOMMENDED that the decision of the Commissioner be AFFIRMED.

I.    **Procedural History**

Plaintiff filed her current applications for disability income benefits and supplemental security income benefits on May

7, 2007[1], alleging disability since December 15, 2005 due to scoliosis, arthritis, depression, nerve problems and neck injury. (Tr. 86-93, 112). Plaintiff's earnings record shows that she has sufficient quarters of coverage to remain insured through December 31, 2011 (her "date last insured"), and that she is insured through that date. (Tr. 94, 107). Her applications were initially denied on July 3, 2007, and she filed a request for a hearing before an Administrative Law Judge ("ALJ") (Tr. 33-46, 85). On December 23, 2008, ALJ Warren Hammond, Jr., ("ALJ Hammond") held an administrative hearing which was attended by the Plaintiff, her attorney, and a vocational expert ("VE"). (Tr. 15-32). On March 18, 2009, ALJ Hammond issued an unfavorable decision. (Tr. 5-14). Plaintiff appealed the decision, and submitted additional evidence. (Tr. 1-4). On July 3, 2009, the Appeals Counsel ("AC") denied Plaintiff's request for review. The AC Order stated that "[i]n looking at your case, we considered the reasons you disagree with the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision."

---

[1]The earlier decision denying Plaintiff benefits through January 19, 2007 is binding because Plaintiff did not appeal that decision. Thus, the decision before this court is whether Plaintiff has been disabled since January 20, 2007.

(Tr. 2). Plaintiff then filed the instant action. Oral argument was held on June 17, 2010, and the parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.  **Background Facts**

Plaintiff was born on June 6, 1977, and was 31 years old at the time of the administrative hearing (Tr. 18, 86, 89).  She testified that her last full-time work was as a certified nurse's assistant (hereinafter "CNA") in 2005, and that she stopped working at that job because of transportation problems and problems with her back.  (Tr. 20).  Plaintiff also testified that she works part-time off and on at a plasma center to help support herself. (Tr. 21). Plaintiff further testified that she is unable to work full-time because of pinched nerves in her neck and back, and scoliosis.  (Tr. 21-22).  According to Plaintiff, her worst pain is in her neck, shoulders and back, and on a scale of 1 to 10, she places her pain level at 6 or 7. (Tr. 22-25).

With respect to her daily activities, Plaintiff reported that she cares for her personal needs, cares for her two minor children, ages 8 and 12, and is able to perform some household chores, such as cooking and shopping, but requires assistance with the lifting.  (Tr. 19, 26, 122, 190).

## III. Analysis

### A.   Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one. This Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[2] A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131

_____

[2]This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

4

(11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. Lexis 10163 (S.D. Ala. June 14, 1999).

An individual who applies for Social Security disability benefits must prove his disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process which is be utilized by the ALJ in determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.[3]

---

[3]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. <u>Id.</u> at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove
(Continued)

**B.  Discussion**

(i). ALJ's decision

In the case sub judice, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011, and that she has not engaged in substantial gainful activity since January 20, 2007, the current adjudication period.  The ALJ concluded that while Plaintiff has the severe impairment of degenerative disc disease, she does not have an impairment or combination of impairments that meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4.  (Tr. 11-12).  The ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not fully credible. (Tr. 13).  The ALJ concluded that Plaintiff retains the residual

---

at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

functional capacity ("RFC") to perform a full range of medium work and is capable of performing her past relevant work as a certified nurse's assistant. (Tr. 12-13).

(ii). Medical evidence

The relevant evidence[4] of record reflects that Plaintiff had back surgery in 1992 to correct scoliosis. (Tr. 167, 185, 193, 227). In May 2006, Plaintiff was treated at University of South Alabama Medical Center following a motor vehicle accident. X-rays of Plaintiff's chest, left hand and finger, and cervical, thoracic and lumbar spine were normal, as were CT's of Plaintiff's cervical spine and brain. She was provided a cervical collar and released. (Tr. 151-155).

Plaintiff was also treated at Franklin Primary Health Center, Inc. ("Franklin") during 2006 and 2007. In May 2006, Plaintiff complained of low back pain and side effects from Ultram. Plaintiff was instructed to discontinue the Ultram, and was prescribed Darvocet instead. Plaintiff was also referred for pain management. (Tr. 165-168). During Plaintiff's December

_____

[4]The period of consideration in this case is from January 20, 2007 (the day after the previous unappealed ALJ decision) through March 18, 2009 (the date of the current ALJ decision). While the undersigned has examined all of the medical evidence contained in the record, including those records which were generated before or after the period of consideration, only that evidence which has some bearing on the issues before the Court is included in the summary.

19, 2006 visit, her physical exam was normal except for a positive straight leg test of 60 degrees[5]. She was diagnosed with idiopathic thoraciclumbar scoliosis, and referred to orthopedics and pain management.

Plaintiff was next seen at Franklin on April 2, 2007. Plaintiff reported that she was not improving and requested to see a chiropractor. Plaintiff also acknowledged that she had lost her prescription for analgesics and had stopped wearing the c-spine collar. Plaintiff also reported improvement in movement. Plaintiff's physical exam was normal except for a 40 percent loss of motion with flexion and extension in her neck. (Tr. 162).

Plaintiff was also treated by James M. Crumb, M.D., at Coastal Neurological Institute from January to April 2007. She reported low back pain, bilateral leg pain, shortness of breath, depression and nausea, and estimated her pain index as "7." Nerve studies and EMG were performed on her lower extremities and resulted in normal findings. She was assessed with low back pain and prescribed Zanaflex and Lyrica. (Tr. 179-184).

---

[5]The straight leg raising test is graded as positive at 0 degree-30 degrees, positive at 30 degrees-60 degrees, positive at greater than 60 degrees, or negative. <u>See</u> http://www.ncbi.nlm.nih.gov/pubmed/7709276. (Last visited December 2, 2010).

A February 19, 2007 MRI of Plaintiff's cervical spine showed mild central disc bulging at C4-C5 and C5-C6, with minimal foraminal encroachment and no disc herniation or foraminal stenosis at any cervical level. A lumbar spine MRI on the same day produced limited examination due to extensive artifact from Harrington rods through the L4 level. The lumbar spine MRI showed mild left intraforaminal disc bulge with mild left foraminal encroachment at the L3-L4 level, and no evident lumbar disc herniation or central canal stenosis. (Tr. 177-178, 185-186).

During a March 21, 2007 visit with Dr. Crumb, Plaintiff reported that her medication was not controlling her pain, and was causing diarrhea and vomiting. Upon examination, the muscle strength in Plaintiff's lower extremities was 5/5. An examination of her lumbar spine reflected lateral bending at 10-15 degrees. Limited rotation, extension and flexion were also noted. Additionally, Plaintiff had a normal standing forward flexion test, and a normal bilateral stork test. (Tr. 174) Dr. Crumb indicated that Plaintiff had three levels of potential cervical injury based evidence of degeneration at C4-5, C5-6 and C6-7 levels. He rated the C4-5 as definite, and noted that he would defer judgment for a year with respect to the C5-6 and C6-7 and that a repeat MRI could be performed in a year for a more accurate grading of C5-6 and C6-7. Dr. Crump's notes reflect

that Plaintiff's pain was much better, although she reported that it was not well controlled on her current medication and exercise regime. Her medication was to be changed and she was to be rechecked at appropriate intervals. (Tr. 175).

Dr. Crumb's office notes reflect that during an April 18, 2007 visit, Plaintiff reported neck and hand pain, and that her pain was not well controlled on her current medication and exercise regime. On examination of her cervical spine, her extension was limited to 0-15 degrees and her flexion was limited to 30-40 degrees. Her lateral bending and rotation were also limited. No swelling or tenderness was noted on her cervical spine. Plaintiff was diagnosed with degenerative disc disease, cervical. The notes also reflect that Plaintiff's medication was to be changed, and that she was to be rechecked at appropriate intervals. (Tr. 170-172).

Plaintiff underwent an Adult Mental Examination at the request of the Agency on June 13, 2007. The examination was performed by Kim M. Zweifler, Ph.D. On mental status exam, Dr. Zweifler observed that mood seemed depressed and her affect was flat, but she did not appear anxious. Plaintiff was oriented to time, place, and person. Dr. Zweifler noted no signs of hallucinations or delusions, or distortions of thinking or preoccupations. Plaintiff reported suicidal ideations at times, but denied imminent plan or desire to harm herself or others.

She also denied homicidal ideations. Dr. Zweifler noted Plaintiff's limited judgment and insight, and estimated that she functions in the average range of intelligence. (Tr. 188-191). Dr. Zweifler diagnosed Plaintiff with depression and opined that a favorable response to treatment could be expected within 6 to 12 months. (Tr. 191).

Donald E. Hinton, Ph.D., completed a Psychiatric Review Technique at the request of the Agency on July 3, 2007. He diagnosed Plaintiff with depressive disorder and opined that Plaintiff is moderately limited in her ability to maintain social functioning and to maintain concentration, persistence or pace, and is mildly restricted in her activities of daily living. (Tr. 201-214).

In Mental Residual Functional Capacity Assessment dated July 3, 2007, Dr. Hinton opined that Plaintiff should be able to remember, understand and carry out short simple instructions, and attend and concentrate for two hour intervals, and that she should have infrequent contact with the general public and infrequent changes in the work place. (Tr. 215-218).

A Physical Residual Functional Capacity Assessment was completed by an Agency Disability Examiner on July 3, 2007. (Tr.192-199). Plaintiff was assessed with mild bulging disc of the cervical spine and was limited to occasional lifting/carrying 50 pounds, frequent lifting/carrying 25 pounds,

and standing/walking/sitting about six hours in an eight-hour workday.  The Examiner opined that Plaintiff could engage in frequent climbing, balancing, stooping, kneeling, crouching, and crawling. No postural, manipulative, visual, communicative or environmental limitations were noted.  (Tr.192-199).

Following the ALJ's decision, Plaintiff submitted additional documents to the Appeals Council in connection with her appeal.  One document is a medical record signed by Dr. Crumb and dated March 21, 2007.  Dr. Crumb opines that Plaintiff can perform "light work" with the following restrictions: lifting, pushing and pulling 20 pounds occasionally and 10 pounds frequently; occasional bending, stooping, kneeling, squatting, crawling, ladder climbing and overhead work; and frequent stair climbing, overhead reaching, sitting, standing, walking and working at heights.  (Tr. 224) Plaintiff also submitted to the AC a second document signed by Dr. Crumb and dated April 19, 2007. In the document, Dr. Crumb once again opined that Plaintiff could perform "light work" and that she was capable of lifting, pushing and pulling 20 pounds occasionally and 10 pounds frequently. (Tr. 225).

In addition, Plaintiff submitted the medical records from Clayton Lane, M.D., dated November 21, 2007. (Tr. 227-228). Dr. Lane's office notes reflect that Plaintiff reported that she was working as a stock clerk and that she had been given pain

patches and medication which were not controlling her pain. On physical examination, Plaintiff had tenderness over her spinal muscles, and was able to bend forward to 50 degrees and backward to 5 degrees. X-rays showed no instability of her neck and some junctional hyperextension at L3-4 in her low back but no significant listhesis. Dr. Lane recommended that Plaintiff be referred for pain management and suggested that she see Dr. West if she wanted to pursue surgical options since he performed her original surgery.[6] (Tr. 228).

In addition to the records submitted to the AC, Plaintiff has also submitted various records to the Court, including treatment notes from 1992-1995; medical records from Robert L. White, M.D., dated June 20, 2006; a medication list from Franklin; medical records from James Lawrence, M.D., dated July 29, 2009; a doctor's certificate dated October 29, 2009 from Otis Hanneger, M.D.; Mobile Emergency Room records dated September 19, 2007; nurse's note dated January 13, 2007; undated photographs; and 12 x-rays dated June 9, 2006.

(iii). Issues

In her brief, Plaintiff alleges that she is not able to perform her previous past jobs to the full extent, and that she

---

[6] Plaintiff also submitted to the AC various prescription records from the Franklin Clinic dated January 2, 2009 through March 21, 2009.

is disabled, but not totally disabled. Plaintiff further alleges that the Commissioner failed to evaluate the records correctly, and failed to take into consideration her limitations, medication, and job requirements. Additionally, Plaintiff alleges that the Commissioner did not acknowledge her impairments or combination of impairments. (Doc. 16).

As a preliminary matter, the undersigned observes that it is not clear whether Plaintiff is challenging only the ALJ's decision or both the ALJ's decision and the AC's decision denying review. Because Plaintiff is proceeding *pro se*, the court is required to review Plaintiff's pleadings liberally in order to ascertain the essence of her arguments[7]. In so doing, the undersigned is giving Plaintiff the benefit of the doubt and assumes that Plaintiff is challenging both the ALJ's decision and the AC's decision denying review. In her brief, Plaintiff contends that the medical records that she presented were not properly reviewed. (Doc. 16). In this case, the AC had before it not only the medical records and other documents which were presented to the ALJ, but also the additional medical records that were presented on appeal. As noted supra, following the

_____

[7] "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (citation omitted).

ALJ's denial of benefits, Plaintiff submitted to the AC two medical assessments prepared by Dr. Crumb in March and April 2007, and the medical records from Dr. Lane. Plaintiff does not offer any explanation for failing to submit these records to the ALJ. The AC reviewed the additional records, and held that they did not provide a basis for overturning the ALJ's decision. Accordingly, the Court will first address the records submitted to the AC and the AC's decision denying review.

"When a claimant challenges both the ALJ's decision to deny benefits and the decision of the AC to deny review based on new evidence, 'a reviewing court must consider whether that new evidence renders the denial of benefits erroneous.'" Poellnitz v. Astrue, 349 Fed. Appx. 500, 501 (11th Cir. 2009)(quoting Ingram v. Comm'r of Social Sec. Admin., 496 F.3d 1253, 1262, 1265-66 (11th Cir. 2007). Generally, a claimant is allowed to present new evidence at each stage of the administrative process. Ingram, 496 F.3d at 1260-61; Poellnitz, 349 Fed. Appx. at 503. "The AC must consider new, material and chronically relevant evidence and must review the case if the ALJ's actions, findings or conclusion is contrary to the weight of the evidence currently of record". Id. at 503. (quoting 20 C.F.R. 404.970(b)).

Section 405(g) permits a district court to remand an application for benefits to the Commissioner by two methods:

sentence four or sentence six of the statutory provisions. Poellnitz, 349 Fed. Appx. at 503-504. Sentence six remands are "available when evidence not presented to the Commissioner at any stage of the administrative process requires further review." Ingram, 496 F. 3d at 1267. Sentence six "does not grant a district court the power to remand for reconsideration of evidence previously considered by the [AC]". Id. at 1269. Thus, remand to the AC is warranted under sentence six when 1) new, noncumlative evidence exists, 2) the evidence is material, and 3) good cause exists for the claimant's failure to submit the evidence at the administrative level. Id. at 1267. A sentence four remand is proper when the evidence was properly before the Commissioner, but "the [AC] did not adequately consider the additional evidence." Ingram at 1268 (quotation omitted). To warrant a sentence four remand, the Court must either find that the decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Poellnitz, 349 Fed. Appx. at 504.

In Ingram, the Eleventh Circuit suggested that the "good cause" standard is not germane to sentence four situations where evidence is submitted to the AC and incorporated into the administrative record. Ingram, 496 F. 3d at 1265-69. Following Ingram, a panel of the Court in Poellnitz, observed that "our

precedent has not firmly established whether a claimant who first presents additional evidence to the AC is required to demonstrate good cause in order to warrant remand." Poellnitz, 349 Fed. Appx. at 504. Later, in Robinson v. Astrue, 365 Fed. Appx. 993 (11th Cir. 2010) yet another panel of the Court held that "[w]hen reviewing the appeals council's denial of review, we must 'look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the appeal council must consider in making its decision whether to review an ALJ's decision.'... 'New evidence' is evidence that is non-cumulative and 'material' evidence is evidence that is 'relevant and probative so that there is a reasonable possibility that it would change the administrative result.'" Robinson, 365 Fed. Appx. at 996 (quoting Milano v. Bowen, 809 F.2d 763, 766 (11th Cir. 1987) (internal citation omitted)).

Based upon the decisions in Ingram, Poellnitz, and Robinson, it is not clear whether there remains a "good cause" requirement for sentence four remands within this Circuit. The undersigned finds however that assuming *arguendo* that the good cause requirement is not required for a sentence four remand, and as a result, that Plaintiff's failure to establish good cause for failing to present the relevant documents to the ALJ is not fatal, she has nevertheless failed to establish that the additional evidence presented to the AC would have changed the

administrative outcome.  As noted, Plaintiff submitted to the AC treatment records from Dr. Lane.  The notes reflect that he treated Plaintiff on one occasion in November 2007.  While the treatment notes are chronically relevant as they were generated during the relevant time frame, and are new in that they were not presented to the ALJ, they are cumulative because they contain no additional information about Plaintiff's condition. The March and April 2007 physical evaluations prepared by Dr. Crumb are also chronologically relevant in that they cover the time period in question and were never presented to the ALJ. While the ALJ had Dr. Crumb's treatment notes for the January through April 2007 time period, the record before the ALJ did not contain any assessment of Plaintiff's functional limitations by an examining or treating physician.[8]  Thus, the assessments were new and non-cumulative.  See Robinson, 365 Fed. Appx. at 996-97 ("Here, Robinson did not provide the ALJ with her treating physician's affidavit, and the ALJ had no duty to consider the evidence that was not before it.  Therefore the affidavit of Robinson's treating physician was "new" when it was presented to the Appeals Council.").

---

[8] While the record before the ALJ does contain a physical assessment by a disability examiner, the assessment was based on a review of the medical records as opposed to a physical examination.

The undersigned finds, however, that while Dr. Crumb's physical assessments were material, the AC correctly concluded that they would not likely change the administrative outcome. First of all, Dr. Crumb did not opine that Plaintiff is disabled and unable to engage in substantial employment. To the contrary, Dr. Crumb concluded that Plaintiff is able to perform light work. This assessment is consistent with the ALJ's ultimate determination that Plaintiff is not disabled. Moreover, while Dr. Crumb's assessment that Plaintiff could engage in light work is at odds with the ALJ's finding that Plaintiff could engage in medium work, the AC properly concluded, based on the entire record before it, that Dr. Crumb's assessments would not have changed the administrative outcome because the record contains expert vocational testimony which identifies unskilled light jobs existing in the national economy that a person of Plaintiff's age and educational level could perform. The vocational expert identified fast food worker, assembler, and parking lot attendant as light and unskilled jobs existing in the region and the nation that could be performed by a person of Plaintiff's age and educational level. The VE also identified the number of such jobs that exist in the region and the nation. (Tr. 30). In view of this vocational testimony regarding the existence of light duty jobs that Plaintiff could perform, the AC properly concluded that Dr.

19

Crumb's 2007 assessments, wherein he opined that Plaintiff could perform light work, would not have changed the administrative outcome in this case.

As noted supra, in addition to the records that Plaintiff submitted to the AC, she also submitted various records to the Court. The law is clear that a remand under sentence six is only proper when new material that was not incorporated into the administrative record for good cause comes to the attention of the district court. Ingram, 496 F.3d at 1267. A review of the records reflects that many of the documents, such as treatment notes from 1992-1995, X-rays dated June 2006 and medication lists are not chronically relevant because they do not relate to the time period in question, and due to the fact that Plaintiff failed to establish good cause for not submitting the documents during the administrative process.

Plaintiff also submitted treatment records and medication lists which were generated after the ALJ's decision. The treatment records and medication lists are not chronically relevant because they do not relate to the time period in question. For instance, Dr. Lawrence's treatment record dated July 29, 2009, details his examination of Plaintiff but offers no opinion about Plaintiff's condition during the period of consideration. Additionally, while Plaintiff submitted to the Court treatment notes from Mobile Infirmary dated September 19,

2007, which is during the period of consideration, Plaintiff failed to offer any explanation for failing to present these records during the administrative process. Plus, the records are cumulative of information already contained in the administrative record.

Plaintiff also submitted undated photographs of herself to the Court yet she fails to explain how the photographs are in any way relevant to the issue of her ability to work during the period of consideration. Accordingly, for the reasons set forth above, the undersigned finds that the new evidence submitted for the first time at the district court level does not meet the requirements for a sentence six remand.

Additionally, the undersigned finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence. The record is totally devoid of any evidence that suggests that Plaintiff is not capable of working. As noted supra, even Plaintiff's treating physician, Dr. Crumb, concluded that she is capable of engaging in light work, and during the administrative hearing, the VE identified unskilled light jobs existing in the national economy that a person of Plaintiff's age and educational level could perform. Accordingly, the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence.

Plaintiff alleges that the ALJ erred by not acknowledging her combination of impairments in determining that she could return to her past work. (Doc. 16 at 2). Defendant responds that the ALJ considered all of Plaintiff's impairments in combination, and that he met his requirement for doing so by finding that Plaintiff did not suffer an impairment or combination of impairments such that she could not engage in work activity for a period of at least twelve consecutive months. (Doc. 20 at 12).

In Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991), the Eleventh Circuit held that the ALJ's statement that the claimant did not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4" evidenced consideration of the combined effect of the claimant's impairments. See also Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (holding that the ALJ's finding that Plaintiff had several injuries which were serious, but that "he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1..." was evidence that he considered the combined effects of his impairments.) Id. (citing Jones, 941 F.2d at 1533); Sneed v. Barnhart, 214 Fed. Appx. 883, 887 (11th Cir. 2006)(finding that the ALJ can satisfy his duty by stating that he considered

whether the claimant suffered from any impairment or combination of impairments).

In the present case, the ALJ stated as follows:

> The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

(Tr. 12). In doing so, he implies consideration of the combined effect of the claimant's impairments pursuant to <u>Jones</u>, 941 F.2d at 1533. Additionally, the ALJ discussed Plaintiff's depressive disorder (Tr. 11), her testimony as to her limitations resulting from back, neck and shoulder pain (Tr. 12-13), and the results of nerve conduction studies, EMG and an MRI. (Tr. 13). The ALJ also repeatedly stated in his opinion that his determinations were made based on the entire record, further indicating that the ALJ considered all of Plaintiff's impairments in combination in making his findings. (Tr. 10, 12, 13). Plaintiff's argument that the ALJ did not consider all her impairments in combination in making his determinations must thus fail.

### IV.  <u>Conclusion</u>

For the reasons set forth, and upon consideration of the administrative record and memoranda of the parties, it is RECOMMENDED that the decision of the Commissioner of Social Security, denying Plaintiff's claim for period of disability and

disability income benefits and for supplemental security income
be AFFIRMED.

The attached sheet contains important information regarding
objections to this Report and Recommendation.

DONE this **2nd** day of **December, 2010**.

_____**/s/SONJA F. BIVINS**_____
**UNITED STATES MAGISTRATE JUDGE**

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
## AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
## AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

**1.  Objection.**  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(c); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten[9] days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[9]The Court's Local Rules are being amended to reflect the new computations of time as set out in the amendments to the Federal Rules of Practice and Procedure, effective December 1, 2009.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection**.   Any opposing party may submit a brief opposing the objection within fourteen (14) days of being served with a copy of the statement of objection.   Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.   Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

　　　**__/s/ SONJA F. BIVINS_____**
　　　**UNITED STATES MAGISTRATE JUDGE**